**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
In re                                              :     **NOT FOR PUBLICATION**
                                                   :
THE 1031 TAX GROUP, LLC, et al.,                   :     Chapter 11
                                                   :     Case No. 07-11448 (MG)
                                                   :     Jointly Administered
                            Debtors.               :
------------------------------------------------------------x


**MEMORANDUM DECISION AND ORDER CONDITIONALLY GRANTING**
**DEBTORS' MOTION FOR ENTRY OF AN ORDER UNDER 11 U.S.C. §§ 105(a)**
**AND 363 APPROVING CONSULTING AND SERVICES AGREEMENT**
**BETWEEN THE DEBTORS AND EDWARD G. MORAN LLC**

**APPEARANCES:**

DREIER LLP
*Attorneys for the Debtors*
499 Park Avenue
New York, New York 10022
By:   Norman N. Kinel, Esq.
      Paul Traub, Esq.

DIANA G. ADAMS
United States Trustee
33 Whitehall Street, 21st Floor
New York, New York 10004
By:   Andrew Velez-Rivera, Esq.
      Linda Riffkin, Esq.
      Greg M. Zipes, Esq.

GREENBERG TRAURIG, LLP
*Attorneys for the Official Committee of Unsecured Creditors*
200 Park Avenue
New York, New York 10166
By:   Thomas J. Weber, Esq.
      Melanie L. Cyganowski, Esq.

TEITELBAUM & BASKIN, LLP
*Attorneys for the Certain Exchange Parties*
3 Barker Avenue, Third Floor
White Plains, New York 10601
By:   Jay Teitelbaum, Esq.

GOLENBOCK EISEMAN ASSOR BELL & PESKOE LLP
*Attorneys for Certain Exchange Parties*
437 Madison Avenue
New York, New York 10022
By:   Jonathan L. Flaxer, Esq.

**MARTIN GLENN,**
**United States Bankruptcy Judge**

The debtors and debtors in possession have moved for approval, pursuant to §§ 105(a) and 363 of Bankruptcy Code, of a Consulting and Services Agreement (the "Consulting Agreement") between the Debtors and Edward G. Moran LLC, dated June 21, 2007 (Edward G. Moran and Edward G. Moran LLC are together referred to as "Moran").  The Consulting Agreement sets forth the terms of Moran's appointment as sole manager and/or director of the Debtors.  The U.S. Trustee and several other parties in interest oppose the motion.  The Court grants the motion on the conditions described in this Opinion.[1]

## BACKGROUND

**A.  Introduction**

On May 14, 2007, The 1031 Tax Group, LLC ("1031 Tax Group") and various affiliates (the "Debtors") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code (the "Petition Date").  On June 11, 2007, Debtor AEC Exchange

---

[1]   The U.S. Trustee and several other parties in interest have moved for the appointment of a chapter 11 trustee (the "Trustee Motion").  The Court heard argument on the Trustee Motion on July 2, 2007, and held an evidentiary hearing on the Trustee Motion on July 11, 2007, the same day as the hearing on the motion to approve the Consulting Agreement.  The Trustee Motion remains under submission.  The proposed Consulting Agreement can be terminated on 15 days' notice.  Therefore, if the Trustee Motion is subsequently granted, the chapter 11 trustee may terminate Moran's contract without significant unnecessary expense to the Debtors.  At the July 2, 2007 hearing, the U.S. Trustee stated on the record that Moran is one of the individuals she has interviewed for possible appointment as a chapter 11 trustee, and she has further acknowledged that Moran is an experienced and respected bankruptcy professional.

2

Company, LLC filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors' cases are being jointly administered.  On May 30, 2007, the U.S. Trustee appointed an official committee of unsecured creditors (the "Creditors Committee") in the Debtors' cases.

This Court has jurisdiction over the motion pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding under 28 U.S.C. § 157(b)(2).

**B.  The Debtors' Business**

Prior to the Petition Date, each of the Debtors acted as a "qualified intermediary" for tax deferred like-kind property exchanges pursuant to § 1031 of the Internal Revenue Code, 26 U.S.C. § 1031.  A § 1031 tax deferred exchange allows a deferral of the capital gains tax that would otherwise be due upon the sale of an investment property.  As of the Petition Date, Debtors had more than 300 open exchange contracts representing an estimated liability of $151 million to exchange participants.  To qualify to defer capital gains taxes, an exchange participant is required to identify a replacement property within 45 days after the sale of its initial investment property and must close on the purchase of a replacement property within 180 days after the sale of the initial property.  The size of the Debtors' open exchange transactions ranged from the tens of thousands to more than $10.5 million and averaged approximately $550,000.

**C.  Events Leading to Consulting Agreement**

Prior to the Petition Date, the Debtors were controlled by Edward H. Okun ("Okun").  Okun is the sole member of 1031 Tax Group, a Delaware limited liability company.  1031 Tax Group is the parent of a group of other limited liability companies,

3

three corporations and one partnership. 1031 Tax Group is, directly or indirectly, the sole member, sole shareholder, or partner of the other Debtors. Okun is also the sole manager or director of the Debtors. These positions – "manager" and "director" – are governance positions created by the applicable state limited liability company acts and state corporation codes.

It is undisputed that Okun or other non-debtor entities which he controls "borrowed" more than $150 million from the Debtors, supported by short-term, unsecured promissory notes that are now past due. Shortly prior to the Petition Date, at the urging of Debtors' counsel, Okun signed a personal guarantee of the past due promissory notes and he agreed to collateralize the guarantee with non-debtor property, although that has not yet been accomplished. As a result of these unpaid promissory notes, the Debtors did not have the funds necessary to close all of the open 1031 property exchanges, resulting in the bankruptcy filings.

The Debtors, the Creditors Committee, Okun and a potential third-party lender have been negotiating for several weeks to monetize the non-debtor collateral to permit funds to be paid to the Debtors to facilitate closing open exchange transactions and compensate exchange participants for whom the 180 day deadline has already past. It remains to be seen whether the parties will successfully negotiate a transaction. The Debtors and the Creditors Committee report that Okun has been cooperating with their efforts to inject funds into the Debtors' bankruptcy estates.

The allegations of wrongdoing by Okun are very serious. In an effort to insulate the Debtors from the taint of the alleged wrongdoing, Okun has taken a variety of actions to relinquish all of his management authority over the Debtors while these chapter 11

cases are pending. The U.S. Trustee disputes the validity or effectiveness of these actions.[2]

On May 12, 2007, Okun selected James M. Lukenda ("Lukenda") of Huron Consulting Group, LLC ("Huron") as the Chief Restructuring Officer for the Debtors.[3] Lukenda and his staff at Huron have been managing the Debtors' day-to-day activities since Lukenda's selection.

On May 25, 2007, Okun executed an agreement that the Debtors refer to as the "Irrevocable Delegation Agreement," purporting to give up his management authority and his ability to terminate Lukenda or Huron. Okun and the Debtors contend that this written delegation is irrevocable as long as the chapter 11 cases are pending. The U.S. Trustee contends that the irrevocable delegation is ineffective. At the June 11, 2007 hearing, Okun's counsel represented on the record that Okun irrevocably divested himself of any management power or control over the Debtors during the life of the chapter 11 cases. *See* June 11, 2007 Hearing Transcript (ECF # 269) at 122-23. The Irrevocable Delegation Agreement also contemplated that Lukenda would select – without any input from Okun – a manager who would fulfill the role of sole manager or sole director of each of the limited liability companies or corporate Debtors, and who would be expressly barred from taking any instructions from Okun.

---

[2] Okun's actions were unquestionably done, at least in part, to avoid the appointment of a chapter 11 trustee. For the most part, the Court will address these actions in connection with the Trustee Motion. It is unnecessary to resolve them now in connection with the motion to approve the Consulting Agreement.

[3] Huron was retained to provide interim management to the Debtors and Lukenda was appointed "Chief Restructuring Officer" of the Debtors. The Court approved the retention of Huron on an interim basis on May 22, 2007. On July 3, 2007, an Order was entered granting the retention of Huron and Lukenda on a final basis (*see* ECF # 334). In doing so, the Court necessarily overruled objections from the U.S. Trustee and others that Huron and Lukenda are conflicted because they were initially selected by Okun.

On June 7, 2007, pursuant to the Irrevocable Delegation Agreement and without any input from Okun, Lukenda selected Moran – a widely respected, experienced bankruptcy professional with no prior connections to Okun – to be the manager. Under the proposed retention agreement, Moran is prohibited from taking any direction from Okun. If approved by the Court, Moran's role will be to supervise the Debtors day-to-day management as a board of directors of a corporation would do. Lukenda will continue to be responsible for making all day-to-day decisions. Lukenda will report to Moran, who will have ultimate supervisory authority.

The Creditors Committee has met with Moran. During the July 11, 2007 hearing, the Creditors Committee's counsel strongly supported the motion to approve Moran's retention and strongly opposed the Trustee Motion.

The U.S. Trustee contends that under applicable state and bankruptcy law Lukenda lacks the authority to select his "boss," and that Moran's retention should be rejected by the Court for that reason. The U.S. Trustee also continues to contend that Huron's selection is tainted in that Huron was, in the first instance, selected by Okun, and that, despite the Irrevocable Delegation Agreement, Okun can still exercise management control over the Debtors. As already stated, the Court previously rejected the argument that Huron and Lukenda were conflicted. *See supra* note 3.

In response to the objection to Lukenda's selection of Moran, at Lukenda's request, Okun executed a letter dated July 9, 2007 (the "Ratification Letter"), ratifying the designation of Moran as manager of the limited liability company Debtors, the director of the corporate Debtors, and general partner of the limited partnership Debtor.

6

**DISCUSSION**

While the Debtors have broad discretion to engage consultants such as Moran, subject to Court approval, the positions of manager or director which they seek to have Moran fill are creatures of state law, specifically governed by the applicable state limited liability company acts and state corporation codes. These state laws must be followed to make the Debtors' proposed appointments of Moran. The Bankruptcy Code does not authorize the bankruptcy court to fill these positions, or to bypass the procedures that the state statutes mandate.[4]

The Delaware Limited Liability Company Act applies to 1031 Tax Group and expressly permits a sole member to select a manager if the Operating Agreement permits it. 6 Del. Code Ann. Tit. 6, § 18-101(10) (2002)[5]; 6 Del. Code Ann. Tit. 6, § 18-401; 6

---

[4] The Debtors argue that *In re Gaslight Club, Inc.*, 782 F.2d 767 (7th Cir. 1986) establishes that the bankruptcy court has the authority under §§ 105(a) and 1107(a) of the Bankruptcy Code to *appoint* a "responsible officer" for the Debtors. The Court disagrees. In affirming the district court, the Seventh Circuit in *Gaslight* found that § 303 of the Delaware Corporation Code permitted the appointment of a "responsible officer" in certain circumstances. After "the creditors' committee, the person presently in control and the majority and controlling shareholder of the debtor agree[d] to this course of action [the appointment of a new 'responsible person']," *id.* at 771, the court concluded that the district court was correct in refusing to remove the responsible person and replace him with a chapter 11 trustee, after the person previously in charge changed his mind and wanted a trustee to replace the responsible officer. *Id.* Sections 105(a) and 1107(a) may empower a bankruptcy court to prevent a debtor from removing a manager, officer or director, but they do not provide the Court with an independent power of appointment.

The Debtors also argue that the Supremacy Clause of the Constitution empowers the bankruptcy court to override state law and exercise the power of appointment. The Debtors rely on *dicta* in *In re United Press Int'l, Inc.*, 60 B.R. 265, 274 (Bankr. D. D.C. 1986) ("But if this Court is wrong in its interpretation of Delaware law, then the supremacy clause of the Constitution provides ample authority for recognizing the priority of the provisions of the Consent Order, issued pursuant to the Bankruptcy Code, over any contrary provisions of state law."), to support its argument. The Court disagrees with the *dicta* in *United Press Int'l*. The Supremacy Clause is not an independent source of positive law on corporate governance. It operates when the application of state law impermissibly interferes with federal law, or when state law is entirely displaced. Neither is the case here. The Bankruptcy Code leaves state corporate governance law largely untouched, the primary exception being the power to order the appointment of a chapter 11 trustee pursuant to §1104.

[5] A "Manager" under § 18-101(10) of the Delaware Limited Liability Company Act is defined as: "a person who is named as a manager of a limited liability company in, or designated as a manager of a limited liability company pursuant to, a limited liability company agreement or similar instrument under which the limited liability company is formed." 6 Del. Code Ann. Tit. 6, § 18-101(10).

7

Del. Code Ann. Tit. 6, § 18-402.[6]  Section 18-407 of the Delaware Limited Liability Company Act provides a member or a manager with the authority to delegate to one or more other persons the manager's "rights and powers to manage and control the business and affairs of the limited liability company . . . ."  6 Del. Code Ann. Tit. 6, § 18-407.

There is confusion about which operating agreement is in effect for 1031 Tax Group.  In the Second Amended and Restated Operating Agreement of 1031 Tax Group ("Second Amended Operating Agreement"), Huron was substituted for Okun as the manager, but Okun, as the sole member, expressly reserved the right to terminate Huron.  The Second Amended Operating Agreement was introduced in evidence at the July 11, 2007 evidentiary hearing on the Trustee Motion.  It is unsigned and undated, except for a date of May 4, 2007 in the footer.  Section 18-101(7)(b) of the Delaware Limited Liability Company Act provides that a limited liability operating agreement "[s]hall not be unenforceable by reason of it not having been signed by a . . . member."  6 Del. Code Ann. Tit. 6, § 18-101(7)(b).

Subsequent to the July 11, 2007 hearing, on July 13, 2007, Debtors' counsel informed the Court that the Second Amended Operating Agreement was "merely a draft of a potential revised operating agreement, and is not and never was a legally operative document."  (ECF # 390).  If the Second Amended Operating Agreement is not in effect, the Amended and Restated Operating Agreement ("Amended Operating Agreement"), dated December 1, 2006, is still in effect.  Section 3 of the Amended Operating

---

[6] Section 18-402 provides that "[u]nless otherwise provided in a limited liability company agreement, the management of a limited liability company shall be vested in its members . . . provided however, that if a limited liability company agreement provides for the management, in whole or in part, of a limited liability company by a manager, *the management of the limited liability company, to the extent so provided, shall be vested in the manager* who shall be chosen in the manner provided by the limited liability company agreement.  6 Del. Code Ann. Tit. 6, § 18-402 (emphasis added).

8

Agreement designates Okun as the "Manager" and permits Okun to delegate day-to-day management responsibilities to a third party, as Okun did when he designated Lukenda as the Chief Restructuring Officer. The agreement is silent as to whether the member can appoint a manager other than Okun.

1031 Tax Group is the only limited liability company in which Okun is the sole member. For the other limited liability companies, as well as the corporations and the partnership, 1031 Tax Group or one of its affiliates (rather than Okun individually) is the member, shareholder or partner. The applicable state laws for each of the other limited liability companies permit the member to select a manager, and the operating agreements do not bar the delegation of authority.[7] Therefore, the properly designated manager of 1031 Tax Group has the ability to effect the changes in manager or director of the other entities, by causing an amendment to the operating agreements substituting Moran for Okun as the manager, or voting the corporate shares for the election of Moran as the director.[8]

---

[7] Not all of the limited liability companies are organized under Delaware law. Several are organized under Texas law (National Exchange Accommodators, LLC, National Exchange Services QI, Ltd., and NRC 1031, LLC), California law (1031 Advance, Inc., 1031 Advance 132 LLC), Colorado law (Investment Exchange Group, LLC), Florida law (Real Estate Exchange Services, Inc.) and Massachusetts law (AEC Exchange Company, LLC). Those state laws also permit the member to select the manager. There are formalities that must be followed that the Debtors so far have not followed to accomplish their stated objective of appointing Moran as the manager. The Court's Order granting the approval of the Consulting Agreement is conditioned on the Debtors taking the actions required by applicable state law.

[8] For the three corporate Debtors – one Delaware corporation, one Florida corporation, and one California corporation – Okun must be removed or resign as a director and a new director (Moran) must be elected, all in the manner provided by state law. While Okun and the Debtors apparently desire to achieve this result, they have not carried out the steps required by state law to accomplish these changes. The Debtors contend that these state law requirements are mere hyper-technical formalities that should be excused. The Court does not agree with Debtors. Governance of limited liability companies, corporations and partnerships is generally a matter of state law. Failure to comply with state law may leave governance tainted. With Okun's cooperation, as he has demonstrated so far, the Debtors have the ability to resolve these governance issues. Otherwise, the solution under the Bankruptcy Code is for the Court to appoint a chapter 11 trustee.

9

Under applicable Delaware law, Huron's or Lukenda's right to designate the sole manager of 1031 Tax Group would certainly be open to question. Huron and Lukenda have been delegated management responsibilities, but Okun remains the member and manager. The Delaware Limited Liability Company Act allows great flexibility in assigning and delegating management authority, *see generally* Carter G. Bishop & Daniel S. Kleinberger, LIMITED LIABILITY COMPANIES: TAX AND BUSINESS LAW ¶ 14.04 LLC MANAGEMENT (2001), *available at* 2001 WL 633052, but it is far from clear that a subordinate could select the person to whom he reports. Among other things, this would inevitably lead to questions whether the superior or subordinate had the power to fire the other, leaving a management vacuum. The Court need not ponder such questions however, because the Ratification Letter, once memorialized in an amended operating agreement, will result in the sole member – Okun – making a permissible delegation of management authority to Moran. Nothing forbids a subordinate – here Lukenda – from making the selection of the manager so long as the member makes or ratifies the appointment. Under the Delaware Limited Liability Company Act, the operating agreement may also limit the member's ability to manage the business, terminate the manager, or direct the manager's exercise of management authority. 6 Del. Code Ann. Tit. 6, § 18-402 (management authority vests in the manager "to the extent so provided" in the limited liability company agreement). The Irrevocable Delegation Agreement seeks to accomplish those limitations.

The Debtors have moved to retain Moran pursuant to § 363(b)(1) of the Bankruptcy Code. Section 363(b)(1) permits a debtor in possession to use property of the estate "other than in the ordinary course of business" after notice and a

hearing. 11 U.S.C. § 363(b)(1). To obtain court approval to use property under § 363(b), the Debtors must show a legitimate business justification for the proposed action. *See Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983) (noting that a debtor much show "some articulated business justification" for using property outside the ordinary course of business under section 363(b)); *In re Delaware & Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991) (noting that the Third Circuit has adopted "sound business purpose" test for § 363(b)). If a valid business justification exists, the law vests a debtor's decision to use property out of the ordinary course of business with a "strong presumption" that corporate business decisions are made on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company. *Official Comm. of Subordinated Bondholders v. Integrated Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (citing *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)). Accordingly, courts are "loath to interfere with corporate decisions absent a showing of bad faith, self-interest, or gross negligence." *Id.*

The Court agrees with Debtors and the Creditors Committee that a valid business justification exists for the approval of the Consulting Agreement with Moran. It is appropriate that an independent third-party have oversight of Lukenda. At least until the Court rules on the pending Trustee Motion, the Court concludes that Moran can ably fill that very important role.[9]

---

[9] The U.S. Trustee's motion for appointment of a chapter 11 trustee is based upon 11 U.S.C. §1104(a)(1) for "cause," claiming that fraud or mismanagement by "current management" requires the appointment of a chapter 11 trustee. While the U.S. Trustee does not claim that Lukenda or Huron have acted improperly in any way, the U.S. Trustee contends that the timing and manner of the appointment of Lukenda and Huron are ineffective as a matter of law and fail to remove any taint imputed from prior management. Debtors, on the other hand, argue that the appointment process effectively removed Okun from management eliminating any taint, so that "current management" is not implicated and appointment

11

The Court concludes that the Debtors may appropriately retain Moran pursuant to the Consulting Agreement, but that approval of Moran's retention should be conditioned on Okun and the Debtors, within 10 days from the date of this Order, taking all required actions under applicable state laws to amend their organizational documents or take such other actions as are required properly to select or elect Moran as the manager or director of each of the Debtors.  The 1031 Tax Group Operating Agreement should also be amended to conform to the Irrevocable Delegation Agreement, making clear that, without Court approval, Okun cannot terminate the manager or exercise management authority while these chapter 11 cases are pending.

## CONCLUSION

For the foregoing reasons, the Court conditionally approves the motion to retain Moran, subject to the Debtors, and Okun to the limited extend necessary, taking all required actions consistent with applicable state laws to implement the governance changes to reflect the roles that Moran will have for each of the Debtors.  Within 10 days from the date of this Order, the Debtors shall file a report with Court on the status of the actions taken to effect the required governance changes.

**IT IS SO ORDERED.**

DATED:  New York, New York
           July 17, 2007

                                                  **/s/ Martin Glenn**
                                                  **THE HON. MARTIN GLENN**
                                                  United States Bankruptcy Judge

---

of a chapter 11 trustee pursuant to 11 U.S.C. § 1104(a)(1) is unwarranted.  That legal issue, as well as whether a chapter 11 trustee should be appointed pursuant to 11 U.S.C. § 1104(a)(2), as several creditors have argued, will be addressed in a decision on the Trustee Motion.  It is unnecessary for the Court to reach those issues in deciding whether to approve the Consulting Agreement and they are left unresolved for now.