**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x

In re

THE 1031 TAX GROUP, LLC, et al.,

                                  Debtors.

------------------------------------------------------------------x

NOT FOR PUBLICATION

Chapter 11
Case No. 07-11448 (MG)
Jointly Administered

**MEMORANDUM OPINION GRANTING THE CHAPTER 11 TRUSTEE'S**
**FINAL APPLICATION FOR ALLOWANCE OF FEES AND EXPENSES**

Gerard A. McHale, Jr., the Chapter 11 Trustee ("Trustee") of The 1031 Tax Group, LLC and its related affiliates ("Debtors"), requests an order for final allowance for compensation and reimbursement of disbursements. The Trustee requested approval of a final award of $2,085,923.00 (less amounts previously paid). The chapter 11 plan in this case was confirmed on October 7, 2009 (*see* ECF # 1827), and became effective on December 2, 2009 (*see* ECF # 1946). The Trustee has previously sought and received orders granting interim compensation and expense reimbursement for two previous periods, totaling $238,524.62. The current application specifically requests fees and expenses for the period from May 1, 2008 through September 30, 2009, and requests allowance of fees in the amount of $1,851,226.82. The U.S. Trustee has no objection to this request. No other party-in-interest objected to the application, and indeed several creditors (in objections filed to other fee applications) stated no objections and affirmatively commended the Trustee for his work in this case.

**A. Requested Fee and Lodestar Analysis**

The Trustee's proposed total fee of $2,085,923 is approximately 2.43% of the total amount of funds to be disbursed. This percentage is under the statutory limit of 3.0%, which would permit fees of $2,580,000.[1] Assuming his application is granted, the Trustee has agreed to waive reimbursement of disbursements in the amount of $84,028.33. While Bankruptcy Code § 326(a) sets a maximum limit on the compensation that may be awarded to a trustee, § 330 still operates to limit the compensation of trustees to a reasonable amount. *In re Brous*, 370 B.R. 563, 568–69 (Bankr. S.D.N.Y. 2007) (Bernstein, C.J.). Thus, the Court must analyze whether the Trustee's fee request of $2,085,923 is reasonable under the circumstances. *Id.*

When determining reasonableness of a trustee's fee, courts engage in a "lodestar" analysis. *Id.* at 570. The lodestar test was developed by the Third Circuit in an effort to give concrete guidance to courts to assist them in determining reasonable legal fees. *Pennslyvania v. Delaware Valley Citizens' Counsel for Clean Air*, 478 U.S. 546, 562 (1986). Prior to the lodestar test, courts examined the reasonableness of fees by simply examining twelve different factors announced in *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714 (5th Cir. 1974): (1) the time and labor required for the matter; (2) the novelty and difficulty of the questions presented; (3) the skill needed to perform the services appropriately; (4) the preclusion of the professional from taking other cases by working on the matter; (5) the customary fee involved in similar instances; (6) whether the fee is fixed or contingent; (7) any time limitations imposed by the client; (8) the sums involved and the results obtained; (9) the experience and ability of the employed

---

[1] The application claims that the total maximum amount the Trustee could seek is $2,606,250.00. The application does not indicate how it arrived at this number, but it represents 3.03% of the proposed $86,000,000 distribution.

2

professional; (10) whether the case is "desirable" or not; (11) the length of the relationship between the professional and the client; and (12) what awards were granted in similar cases. *Id.* at 720.

A lodestar analysis consists of two steps. *Delaware Valley Citizens' Counsel*, 478 U.S. at 562. First, courts calculate a lodestar amount as a guide to determine what fee is reasonable under the circumstances. This is completed by multiplying the reasonable number of hours expended by the reasonable billing rate of the trustee. *See Masterwear Corp. v. Angel & Frankel, P.C. (In re Masterwear Corp.)*, 233 B.R. 266, 277 (Bankr. S.D.N.Y. 1999). Courts then determine whether any adjustment to this amount is warranted under the twelve factors announced by the *Johnson* court. *Connolly v. Harris Trust Co. (In re Miniscribe Corp.)*, 309 F.3d 1234, 1244 (10th Cir. 2002) (finding that multiple courts when determining trustee compensation first calculate a lodestar amount and then determine if any revision is required based on the *Johnson* factors); *In re Brous*, 370 B.R. at 570 ("The customary way to determine a reasonable fee is to begin with the lodestar test, and then decide whether to apply any appropriate enhancements under *Johnson* . . . ."). In addition to the *Johnson* factors, Congress commands bankruptcy courts to take into account the requirements of § 330. *In re Northwest Airlines Corp.*, 382 B.R. 632, 645 (Bankr. S.D.N.Y. 2008). Courts have held that the lodestar calculation subsumes many of the *Johnson* factors, including the "the novelty and complexity of the matter, the quality of the representation and the results achieved, and the contingent risk of non-payment." *In re Brous*, 370 B.R. at 570 (citations and internal quotation marks omitted). Courts routinely hold that enhancement of the lodestar amounts is only proper

3

in *exceptional and rare cases* when supported by specific evidence and detailed findings. *In re Northwest Airlines Corp.*, 382 B.R. at 645 (citing *In re Brous*, 370 B.R. at 570).

There is no uniform standard assisting bankruptcy courts to determine what level of upward adjustment is reasonable, but any modification cannot represent a windfall to the applicant. *In re THCR/LP Corp.*, No. 04-46898/JHW, 2008 WL 3194056, at *10 (Bankr. D.N.J. 2008); *In re One City Centre Assocs.*, 111 B.R. 872, 879 (Bankr. E.D. Cal. 1990). Moreover, the party requesting an upward adjustment from the lodestar calculation "bears the burden of establishing that an adjustment is necessary to the calculation of a reasonable fee." *In re Brous*, 370 B.R. at 570 (internal quotation marks omitted) (quoting *Grant v. Bethlehem Steel Corp.*, 973 F.2d 96, 101 (2d Cir. 1992)).

The Trustee contends that using the normal lodestar calculation of multiplying the reasonable time expended on the case (3,230 hours) by a reasonable billing rate ($300 per hour blended rate for all work completed), he would be entitled to $998,559. Yet the Trustee now seeks a final allowance of $2,085,923; approximately 2.09 times what he would be entitled to if he simply charged his typically hourly rate.

While the Trustee has had great success in this case—and the Court believes that the Trustee deserves great credit for what has been accomplished—the Trustee must carry the burden of demonstrating that he is entitled to receive over $1 million in additional fees for his work. As indicated by case law, an upward revision from the initial lodestar calculation is only appropriate in rare and exceptional cases. *See, e.g.*, *In re Charles Russell Buckridge, Jr.*, 367 B.R. 191, 201 (Bankr. C.D. Cal. 2007) ("Once the lodestar is established, there is a strong presumption that the lodestar figure represents a reasonable fee which should be adjusted only in rare [or] exceptional cases.") (internal quotation

4

marks omitted). Research has revealed only one other case where a trustee has sought and received a similarly large upward revision. The Tenth Circuit in *In re Miniscribe Corp.*, 309 F.3d at 1239, 1245–46, approved a bankruptcy court's upward revision of a chapter 7 trustee's base lodestar calculation from $711,600 to $1,828,812, or a $1.1 million upwards revision. In *Miniscribe*, the trustee took over an administratively insolvent estate with $3 million in chapter 11 fees and only $150,000 in hand, facing a superpriority claim of $17 million and total claims of over $900 million. *Id.* at 1237. The trustee lowered the superpriority claim from $17 million to $1 million and convinced the entity holding the superpriority claim to loan the estate $1 million to finance litigation which eventually yielded the estate $80 million. The trustee conducted 45 different adversary proceedings, recovering $17 million for the estate and reduced outstanding claims against the estate from $900 million to $168 million. *Id.*

Here, when the Trustee was appointed, the estate was administratively insolvent and no substantial investigation or analysis had been conducted regarding the estate's potential claims. The Trustee led an investigation of the estate and attempted to reconstruct the transactions Okun and the others used to carry out their fraud. Because of the absence of reliable books and records, this investigation involved Herculean efforts by the Trustee and his professionals. The results of the investigation led to months of litigation and settlement negotiations with third parties against whom the Trustee filed or threatened to file adversary complaints.

The Trustee spent a great deal of time negotiating numerous settlements, including the settlement agreements that eventually became the basis for funding the reorganization plan. Specifically, the Trustee was deeply involved with researching and

5

formulating the adversary complaint against Wachovia, which ultimately resulted in a substantial recovery for the estate through a settlement approved by this Court and by Judge James Ware in the U.S. District Court for the Northern District of California, before whom an MDL proceeding[2] is pending. (*See* ECF # 1826.) The Trustee also obtained approval for settlements resulting in substantial recoveries to the estate from the Debtors' insurers (*see* ECF. # 1815, 1818, 1820 and 1825), from the former owners who sold their businesses to Okun (*see* ECF # 1812, 1813, 1814, 1816, 1821, 1822 and 1824), and from Okun's former lawyers (*see* ECF # 1819 and 1823). Other proposed settlements have been negotiated but not yet presented for Court approval. Several other adversary proceedings commenced by the Trustee remain pending before the Court.

The Trustee also drafted and shepherded to approval a disclosure statement and plan of reorganization. Due in no small part to the Trustee's efforts the estate very shortly expects to make a 34 cent initial distribution to its unsecured creditors, with hopefully additional distributions in the future depending on the outcome of pending settlements and litigation.

Other tasks the Trustee completed included:

- Negotiating a cooperation agreement with lead counsel representing the putative class in the *Hunter* matter pending before Judge Ware in the United States District Court for the Northern District of California.

- Assisting in negotiating and drafting the reorganization plan, disclosure statement, and liquidating trust agreement.

- Reviewing the claims register to identify and object to improper claims.

- Analyzing fees charged to the estate by previous professionals and negotiating settlement agreements whereby payments to these

---

[2] *See In re Edward H. Okun Internal Revenue Service §1031 Tax Deferred Exchange Litigation,* MDL No. 2078 (N.D. Cal.).

6

> professionals are subordinated to a full recovery by general unsecured creditors.
>
> - Examining all possible avoidance actions and consulting with counsel regarding the settlement of the same.
>
> - Communicating with the large number of creditors in this case, including posting updates on a website and exchanging e-mails.

Thus, the Court concludes that the Trustee has carried his burden justifying a substantial upward adjustment in the loadstar to be applied in this case. Moreover, the lodestar multiple of 2.09 requested here is within the range of between 1.5 and 2.57 that other courts have deemed acceptable, *see In re Charles Russell Buckridge, Jr.*, 367 B.R. at 206, and the Trustee's blended hourly rate is on the low-end of the reasonableness scale, particularly in light of the high quality of services performed and the complexity of the issues in this case.

Under the facts and circumstances here, the Court concludes that a loadstar of 2.0 is appropriate. Applying this 2.0 loadstar as the multiplier to the Trustee's base calculation of $998,559, the resulting fee award is $1,997,118. In reaching this conclusion the Court has also carefully considered the Trustee's record of accomplishments and the detailed time entries recorded by the Trustee and submitted to the Court in support of the Trustee's application. While a small number of time entries are vague or lacking in detail, the Court concludes that no reduction is appropriate in computing the base loadstar, particularly in light of the reduction in the loadstar multiplier approved by the Court.

**B. EXPENSE REIMBURSEMENT**

The Trustee's application stated that if the Trustee's requested fee was awarded by the Court, he would waive reimbursement of expenses in the amount of $84,028.

Since the Court declined to approve the full amount of the Trustee's request, the Trustee is entitled to reimbursement of reasonable expenses. A review of the Trustee's application reveals a number of questionable disbursements, including (i) a meal at Sparks for $50.00 on May 7, 2009; (ii) a meal at Sparks on June 12, 2008 for $54.00; (iii) a meal at Outback on June 24, 2008 for $70.00; and (iv) a number of very large hotel bills (e.g., Radisson bill for $1,079.18 on May 6, 2009 for an undefined number of nights, an additional bill of $1,744.10 for a stay between June 23, 2008 and June 26, 2008, and bills for stays at the Waldorf Astoria: $1,732.76 bill for a four night stay in July 2008 and $1,991.28 for a four night stay in August 2008). These items total $6,667.32. The Court believes that a downward adjustment of $2,500 should be made in these expenses, reducing the reimbursable expenses to $81,528.

## CONCLUSION

For the foregoing reasons, the Court makes a final award to the Trustee of fees in the amount of $1,997,118 and expenses in the amount of $81,528, for a total award of $2,078,646. Since the Trustee has already received $238,524.62, the Trustee is therefore entitled to receive an additional $1,840,120.38. The Trustee's counsel shall submit an Order consistent with this Opinion.

DATED:     December 9, 2009
           New York, New York

                                             **/s/Martin Glenn**
                                             MARTIN GLENN
                                  United States Bankruptcy Judge