UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
In re                                                                   :
                                                                              :
                                                                              :
The 1031 Tax Group, LLC, et al.,                       :        Chapter 11
                                                                              :        Case No. 07-11448 (MG)
                                    Debtors.              :        Confirmed Case
------------------------------------------------------------x
                                                                              :
                                                                              :
GERALD A. McHALE, JR., not individually       :
but solely in his capacity as Chapter 11 trustee  :
for THE 1031 TAX GROUP, LLC, et al.              :
                                                                              :
                                    Plaintiff,             :
                                                                              :        Adv. Proc. No. 09-01129 (MG)
                         -v-                                        :
                                                                              :
BOULDER CAPITAL LLC, et al.                         :
                                                                              :
                                    Defendants.        :
                                                                              :
------------------------------------------------------------x

**MEMORANDUM OPINION ON APPLICATION OF PREJUDGMENT INTEREST
TO FRAUDULENT TRANSFER CLAIM AND ON ENTRY OF
JUDGMENT PURSUANT TO RULE 54(b)**

*A P P E A R A N C E S:*

GOLENBOCK EISEMAN ASSOR
BELL & PESKOE LLP
*Attorneys for the 1031Debtors Liquidation Trust*
437 Madison Avenue
New York, New York 10022
By:   Jonathan L. Flaxer, Esq.
        David J. Eiseman, Esq.
        Jacqueline G. Veit, Esq.


KLESTADT & WINTERS, LLP
*Attorneys for Defendants*
292 Madison Avenue, 17th Floor
New York, New York 10017
By:   Ian R. Winters, Esq.

1

THE GORDON LAW FIRM LLP
*Attorneys for the Defendants*
101 Federal Street, 17th Floor
Boston, Massachusetts 02110
By:   Stephen F. Gordon, Esq.
      Todd B. Gordon, Esq.

**MARTIN GLENN**
**United States Bankruptcy Judge**

## BACKGROUND

This opinion addresses the calculation of prejudgment interest on the amounts recoverable by plaintiff Gerard A. McHale, Jr., P.A. (the "Trustee"), as Trustee for the 1031 Debtors Liquidation Trust, based on the partial summary judgment in favor of the Trustee against Boulder Capital LLC, Boulder Columbus LLC, Boulder West Oaks LLC, Boulder Holdings VI, LLC and Boulder Holdings X, LLC (collectively, the "Boulder Defendants") arising from three separate fraudulent transfers. The Court resolved the fraudulent transfer issues in two other opinions. *See In re 1031 Tax Group, LLC*, Case No. 07-11448 (MG), Adv. No., 09-01129 (MG), 2010 WL 3369944, at *16-27 (Bankr. S.D.N.Y. Aug. 27, 2010) (the "August 27 Opinion"); Supplemental Mem. Op. Granting Trustee's Mot. For Partial Summ. J., Nov. 1, 2010, ECF # 77. In the August 27 Opinion, the Court concluded that two transfers, on September 7, 2005 and September 29, 2006 in the amounts of $22,769,000 and $1,533,845.24, respectively, were fraudulent transfers under section 548(a) of the Bankruptcy Code, and that the Trustee is therefore entitled to recover a total of $24,302,845.24. *In re 1031 Tax Group, LLC*, 2010 WL 3369944, at *27. The August 27 Opinion resolved the issue of liability with respect to an additional transfer to Boulder in the amount of $18,475,200 on June 26, 2006, but did not resolve the amount the Trustee is entitled to recover because of an open factual issue that has now been resolved by a stipulation of facts. (ECF # 76.) In a separate Supplemental Memorandum

2

Opinion, also entered today, the Court has concluded that the Trustee is entitled to recover $3,340,261.22 based on a pro rata allocation of the June 26, 2006 transfer.

The August 27 Opinion also directed the parties to file additional briefs addressing what prejudgment interest, if any, the Trustee is entitled to recover on account of the fraudulent transfer claims. *Id.* The Boulder Defendants argue that the Trustee is entitled to prejudgment interest at the federal judgment rate pursuant to 28 U.S.C. § 1961 from the date the adversary proceeding was commenced, March 20, 2009 (the "Commencement Date"), until judgment is entered. (The Boulder Defendants' Mem. of Law Regarding the Application of Prejudgment Interest to the Trustee's Claims For Fraudulent Conveyance (the "Boulder Memorandum") at 2.) The federal judgment rate on March 20, 2009 was .64%. Post-Judgment Interest Rates, http://www.utd.uscourts.gov/documents/int2009.html (last visited Nov. 1, 2010).

The Trustee argues that the Court should award prejudgment interest from the Commencement Date, at the federal judgment rates that were in effect on the dates of the fraudulent transfers, September 7, 2005, June 26, 2006 and September 29, 2006, until the date of entry of the judgment, and post-judgment interest thereafter at the federal judgment rate. (Trustee's Mem. of Law Supporting Award of Pre-Judgment Interest on Judgment For Fraudulent Conveyances (the "Trustee Memorandum") at 2.) More specifically, the Trustee asks the Court to apply a 3.76% and a 4.90% interest rate for the September 7, 2005 and September 29, 2006 transfers, respectively. (Trustee Memorandum at 4.) The federal judgment rate on June 26, 2006 was 5.24%. Post-Judgment Interest Rates, http://www.utd.uscourts.gov/documents/int2006.html (last visited Nov. 1, 2010).

For the reasons discussed below, the Court concludes that the Trustee is entitled to recover prejudgment interest from the Commencement Date until the date judgment is entered at

3

a market rate of interest as determined by the bank prime loan rate on the dates of each of the three transfers. The Trustee is also entitled to post-judgment interest at the federal judgment rate for the period after judgment is entered. The Court also determines that a final judgment should be entered on the fraudulent transfer claim pursuant to Federal Rule of Civil Procedure 54(b).

## DISCUSSION

### A. Prejudgment Interest Generally

Although there is no specific reference to prejudgment interest in the Bankruptcy Code, courts have typically relied on the word "value" in section 550(a) as authorizing an award of interest.[1] *See Hechinger Inv. Co. of Del., Inc. v. Universal Forest Prods., Inc. (In re Hechinger Inv. Co. of Del., Inc.)*, 489 F.3d 568, 579-80 (3d Cir. 2007); *In re Bruno Mach. Corp.*, Case No. 05-20412, Adv. No., 07-90028, 2010 WL 2403124, at *21 (Bankr. N.D.N.Y. June 9, 2010). Courts in the Second Circuit and in this district have recognized that the award of prejudgment interest is discretionary, and absent a sound reason to deny prejudgment interest, such interest should be awarded. *See Jones v. UNUM Life Ins. Co.*, 223 F.3d 130, 139 (2d Cir. 2000) (stating that "the question of whether or not to award prejudgment interest is ordinarily left to the discretion of the district court"); *In re Teligent, Inc.*, 380 B.R. 324, 344 (Bankr. S.D.N.Y. 2008) (Bernstein, C.J.) (citing *In re Hechinger*, 489 F.3d at 579-80); *see also In re Milwaukee Cheese Wis., Inc.*, 112 F.3d 845, 849 (7th Cir. 1997). In exercising discretion whether to award

---

[1] Section 550(a) provides:

> Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, *the trustee may recover*, for the benefit of the estate, the property transferred, or, if the court so orders, *the value of such property*, from—
>     (1)    the initial transferee of such transfer or the entity for whose benefit such transfer was made; or
>     (2)    any immediate or mediate transferee of such initial transferee.

11 U.S.C. § 550(a) (emphasis added).

4

prejudgment interest, the Second Circuit has directed a court to consider the following factors: "(i) the need to fully compensate the wronged party for actual damages suffered, (ii) considerations of fairness and the relative equities of the award, (iii) the remedial purpose of the statute involved, and/or (iv) such other general principles as are deemed relevant by the court." *Wickham Contracting Co., Inc. v. Local Union No. 3, Int'l Bd. of Elec. Workers, AFL-CIO*, 955 F.2d 831, 833-34 (2d Cir. 1992) (collecting cases). "The court must, however, explain and articulate its reasons for any decision regarding prejudgment interest." *Henry v. Champlain Enter., Inc.*, 445 F.3d 610, 623 (2d Cir. 2006) (citation omitted). As the three transfers to the Boulder Defendants are recoverable by the Trustee under section 548(a) of the Bankruptcy Code, the Court concludes that prejudgment interest should be awarded based on the facts and circumstances of this case. *See In re CNB Int'l, Inc.*, Case Nos. 99-11240 B, 08-CV-774A, Adv. No. 01-1193B, 2010 WL 3749079, at *9-10 (W.D.N.Y. Sept. 20, 2010) (upholding bankruptcy court decision to award prejudgment interest at federal rate after bankruptcy court concluded that constructively fraudulent transfer occurred).

The court has discretion in selecting the interest rate to be applied in calculating prejudgment interest. *See Fendi Adele S.L.R. v. Burlington Coat Factory Warehouse Corp.*, 689 F. Supp. 2d 585, 614 (S.D.N.Y. 2010) ("[T]his Court has wide discretion in selecting an appropriate rate of prejudgment interest to be applied to the award in this case."). While section 1961 of Title 28 establishes the rate of interest that is to be paid "on any money judgment in a civil case recovered in a district court," there is no federal statute that governs the appropriate rate of prejudgment interest. *See* 28 U.S.C. § 1961(a) ("Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System,

5

for the calendar week preceding [the date of the judgment]."); *Jones*, 223 F.3d at 139.  The Second Circuit has recognized that "[t]he suitability of that postjudgment rate for an award of prejudgment interest will depend on the circumstances of the individual case, and the court need not limit the award of prejudgment interest to the rate at which the injured party would have lent money to the government." *Jones*, 223 F.3d at 139.

Accordingly, courts in this district have adopted several different methodologies for determining an appropriate rate of prejudgment interest.  *Fendi*, 689 F. Supp. 2d at 614 n.4 (collecting cases).  While some courts have looked to the treasury-bill rate embodied in 28 U.S.C. § 1961, *see Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 314 F. Supp. 2d 201, 204 (S.D.N.Y. 2003), others have rejected that approach and awarded prejudgment interest at the New York statutory rate of 9 percent pursuant to N.Y. C.P.L.R. §§ 5001(b) and 5004.  *See* N.Y. C.P.L.R. §§ 5001(b), 5004 (McKinney 2007); *Nat'l Ass'n for the Specialty Food Trade, Inc. v. Construct Data Verlag A.G.*, Case No. 04 Civ. 2983(DLC), 2007 WL 656274, at *2 (S.D.N.Y. Feb. 23, 2007).  Still other courts have looked to the fixed interest rate imposed by the Internal Revenue Service in calculating interest on tax underpayment pursuant to 26 U.S.C. § 6621(a)(2) to determine an appropriate rate of prejudgment interest.  *See Fendi*, 689 F. Supp. 2d at 626; *S.E.C. v. Aimsi Techs., Inc.*, 650 F. Supp. 2d 296, 304 (S.D.N.Y. 2009).

An alternative approach has developed that awards prejudgment interest at the prime, or market rate, based on the bank prime loan rate.  *See Kastsaros v. Cody*, 744 F.2d 270, 281 (2d Cir. 1984) (awarding prejudgment interest of prime plus one percent and noting that such approach of using prevailing interest rates to make such a determination was "consistent with prior case law"); *U.S. Philips Corp. v. Iwasaki Elec. Co.*, 607 F. Supp. 2d 470, 483 (S.D.N.Y. 2009) (setting prejudgment interest in patent case at prime rate); *In re Patriot Seeds Inc.*, Case

6

No. 03-84217, Adv. Nos. 03-8290, 04-8206, 04-8363, 04-8373, 04-8375, 2010 WL 381620, at *26 (Bankr. C.D. Ill. Jan. 20, 2010) (awarding prejudgment interest at the prime rate and following Seventh Circuit precedent which "recommended that, where no statutory rate of prejudgment interest exists, the best starting point is to award interest at the market rate, which means an average of the prime rate for the years in question") (citation omitted); *but see AccuScan, Inc., v. Xerox Corp.*, Case No. 96 Civ. 2579(HB), 2000 WL 280005, at *2 (S.D.N.Y. Mar. 15, 2000) (awarding prejudgment interest at 52-week-maturity treasury-bill rate and rejecting use of prime rate).

Based on the facts and circumstances in this case, the Court rejects both the Boulder Defendants' and the Trustee's arguments that the applicable prejudgment interest rate should be the federal judgment rate, albeit that each party argues for selecting the federal judgment rate on different dates. For the reasons discussed more fully below, the Court opts to award prejudgment interest to the Trustee at the prime, or market, rate of interest in effect on the date of each of the three transfers. *U.S. Philips*, 607 F. Supp. 2d at 483.

### B. The Trustee is Entitled to an Award of Prejudgment Interest Beginning on the Commencement Date

Both the Boulder Defendants and the Trustee argue that the Trustee is entitled to interest accruing from the Commencement Date, March 20, 2009. (Boulder Memorandum at 2; Trustee Memorandum at 2.) There is authority that the appropriate date to begin accruing prejudgment interest is the date on which the fraudulent transfer occurred.[2] But since both parties agree that the Commencement Date is the appropriate date to begin accruing prejudgment interest in this

---

[2] *See, e.g.*, *In re First Nat'l Parts Exch.*, Case No. 98 C 5915, 2000 WL 988177, at *14 (N.D. Ill. July 18, 2000) ("awarding prejudgment interest from the date of the constructively fraudulent transfers"); *In re Richmond Produce, Inc.*, 151 B.R. 1012, 1022 (Bankr. N.D. Cal. 1993) (stating that "under these circumstances, interest should accrue on the sum transferred from the transfer date").

7

case, the Court will simply adopt the parties' position that the Trustee is entitled to prejudgment interest from the Commencement Date, March 20, 2009.[3] The Court now turns to the appropriate rate.

### C. The Trustee is Entitled to an Award of Prejudgment Interest Accruing at the Prime Rate on the Dates of the Fraudulent Transfers

The Court concludes that the Trustee is entitled to prejudgment interest at the prime rate at such rates in effect on the dates of the transfers: September 7, 2005, June 26, 2006 and September 29, 2006.

---

[3] The Court leaves open for other cases whether prejudgment interest from the date of the transfer should apply to a judgment for recovery of a fraudulent transfer. There is authority to begin accruing prejudgment interest from the date of the commencement of the adversary proceeding. *See Bruno Mach. Corp.*, 2010 WL 2403124, at *21-22 ("In this context, interest accrues from the date of the demand, or from the date of the commencement of the adversary proceeding.") (internal quotation marks and citations omitted). But there may be a stronger basis to accrue interest from the commencement date of the adversary proceeding in a preference action under section 547 than in a fraudulent transfer claim under section 548 of the Bankruptcy Code. *See e.g.*, *Bruno Mach. Corp.*, 2010 WL 2403124, at *22 (citing *Breeden v. L.I. Bridge Fund L.L.C. (In re Bennett Funding Group, Inc.)*, Case No. 96-61376, Adv. No. 96-70280A, slip op. at 9 (Bankr. N.D.N.Y. Oct. 30, 1997):

> Interest does not run from the date of the preferential transfer, because the transfer is not improper in any respect at the time it occurs. The determination of a preference and the recovery of the transfer under section 550 are based upon a subsequent event-the transferor's bankruptcy filing-and upon a[sic] analysis of the debtor's . . . bankruptcy (i.e., that the transferee would receive more if it retained the transfer than if the debtor's assets were liquidated). Because the transfer is initially proper, and because there must be some affirmative decision made, supported by section 547(b), to recover the transfer, the consensus position is that prejudgment interest does not begin to accrue until some affirmative demand is made of the transferee to return the transfer.

(quoting *In re Indus. & Mun. Eng'g, Inc.*, 127 B.R. 848, 851(Bankr. C.D. Ill. 1990)).

8

*1.     Application of the Prime Rate as Prejudgment Interest Rate*

The Boulder Defendants argue that the Court should award prejudgment interest to the Trustee at the federal judgment rate on the Commencement Date. (Boulder Memorandum at 2.) On March 20, 2009, the federal judgment rate was an unimpressive .64%. Post-Judgment Interest Rates, http://www.utd.uscourts.gov/documents/int2009.html (last visited Oct. 29, 2010). The Court does not believe that a less than one percent interest rate is appropriate in these circumstances. An interest rate of .64% does not fully compensate the Trustee for actual damages suffered by the fraudulent transfers made to the Boulder Defendants in 2005 and 2006. *See Bruno Mach. Corp.*, 2010 WL 2403124, at *22 (finding the federal post-judgment rate of .27% to be too low). Application of the federal judgment rate on the Commencement Date would be inequitable as the interest rate was particularly low on that date. *See Fendi*, 2010 WL 431509, at *20.

The Court also rejects the approach endorsed by the Trustee. The Trustee requests that the Court apply the federal post-judgment interest rates on the dates the fraudulent transfers were made—3.76% (September 7, 2005 transfer) and 4.9% (September 29, 2006 transfer). *See* Post-Judgment Interest Rates, http://www.utd.uscourts.gov/documents/int2005.html (last visited Oct. 29, 2010); Post-Judgment Interest Rates, http://www.utd.uscourts.gov/documents/int2006.html (last visited Nov. 1, 2010). The federal post-judgment interest rate on June 26, 2006 was 5.24%. *See* Post-Judgment Interest Rates, http://www.utd.uscourts.gov/documents/int2006.html (last visited Nov. 1, 2010). While applying the federal post-judgment rate to prejudgment interest is an accepted alternative approach, the Court believes that application of these rates to the transfers in question would not fully compensate the Trustee for the loss of the funds; the prime,

9

or market, rate better approximates the cost of funds to a private party on the dates of the transfers. *See U.S. Philips*, 607 F. Supp. 2d at 483.

The Court has discretion in the selection of interest rates and "may award interest at or above the prime rate."[4] *Uniroyal, Inc. v. Rudkin-Wiley Corp.*, 939 F.2d 1540, 1545 (Fed. Cir. 1991) (citations omitted). The Supreme Court has stated that the prime rate "reflects the financial market's estimate of the amount a commercial bank should charge a creditworthy commercial borrower to compensate for the opportunity costs of the loan, the risk of inflation, and the relatively slight risk of default." *Till v. SCS Credit Corp.*, 541 U.S. 465, 479 (2004). Application of the prime rate of interest better reflects the opportunity cost of the funds that were fraudulently transferred to the Boulder Defendants. *See River Oaks Marine, Inc. v. Town of Grand Island*, Case No. 89-CV-1016S, 1992 WL 373533, at *8 (W.D.N.Y. Nov. 24, 1992) ("[T]he adjusted prime rate is a better reflection of the marketplace and more closely akin to full compensation. In short, the adjusted prime rate is simply a good indicator of the value of money.") (internal quotation marks and citation omitted). Based on the equities of the case, the Court concludes that the prime rate fully compensates the Trustee for the damages suffered as a result of the fraudulent transfers. *Wickham Contracting Co., Inc.*, 955 F.2d at 833-34.

   *2.    Application of the Prime Rate on the Dates of the Transfers*

The Court will, however, adopt the Trustee's position that the appropriate rates of interest to be applied are those that were in effect on the dates of the transfers. (Trustee Memorandum at 4.) Application of the prime rate more accurately compensates the Trustee for the loss of funds that resulted from the fraudulent transfers that took place in 2005 and 2006. *See River Oaks Marine, Inc.*, 1992 WL 373533, at *8. Consistent with a market-based approach, the equities

---

[4] In appropriate cases, an additional risk adjustment could be added to the prime rate, but the Court declines to do so here in the absence of a record supporting such an adjustment.

10

weigh in favor of awarding prejudgment interest to the Trustee at the prime rates as they existed on the dates of the transfers. The Court concludes that to fully compensate the Trustee for the injury to the Debtors as a result of the three fraudulent transfers, prejudgment interest should be awarded at the prime rate at the date of each transfer—September 7, 2005, June 26, 2006 and September 29, 2006. *See In re Zohdi*, 234 B.R. 371, 385 (Bankr. M.D. La. 1999) (concluding that the purpose of prejudgment interest is to compensate "the estate for the time it was without the use of the transferred funds") (citation omitted).

The Court has reviewed the official statistics published by the Board of Governors of the Federal Reserve. On September 7, 2005, the date of the first transfer, the bank prime loan was 6.5%. Federal Reserve Statistical Release, Selected Interest Rates, http://www.federalreserve.gov/Releases/H15/20050912/ (last visited Nov. 1, 2010). On June 26, 2006, the date of the second transfer, the bank prime loan was 8.0%. Federal Reserve Statistical Release, Selected Interest Rates, http://www.federalreserve.gov/Releases/H15/20060703 (last visited Nov. 1, 2010). And, on September 29, 2006, the date of the third transfer, the bank prime loan was 8.25%. Federal Reserve Statistical Release, Selected Interest Rates, http://www.federalreserve.gov/Releases/H15/20061002/ (last visited Nov. 1, 2010).[5]

The Court concludes that the rates for prejudgment interest are 6.5% for the September 7, 2005 transfer; 8.0% for the June 26, 2006 transfer; and 8.25% for the September 29, 2006 transfer. Accrual of interest for all three transfers begins on the Commencement Date.

---

[5] The federal judgment rates on those dates were considerably lower. Post-Judgment Interest Rates, http://www.utd.uscourts.gov/documents/int2005.html (last visited Nov. 1, 2010) (post-judgment interest rate of 3.76% on September 7, 2005); and Post-Judgment Interest Rates, http://www.utd.uscourts.gov/documents/int2006.html (last visited Nov. 1, 2010) (post-judgment interest rates on June 26, 2006 and September 29, 2006 of 5.24% and 4.90%, respectively).

11

**D. The Trustee Is Entitled to Post-Judgment Interest at the Federal Judgment Rate**

The parties agree that post-judgment interest at the federal judgment rate applies after the date of entry of the judgment. Section 1961 of Title 28 specifically provides that "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court" in an amount "calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield . . . ." 28 U.S.C. § 1961(a). Accordingly, the Trustee is entitled to post-judgment interest accruing from the date of entry of the judgment at the federal judgment rate. *See Bruno Mach. Corp.*, 2010 WL 2403124, at *23 (awarding prejudgment interest and post-judgment interest as calculated under the federal rate).

**E. Final Judgment Should Be Entered Pursuant to Federal Rule of Civil Procedure 54(b)**

The Court also directs pursuant to Federal Rule of Civil Procedure 54(b), made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7054, that a final judgment shall be entered with respect to the Trustee's fraudulent transfer claim under Bankruptcy Code § 548(a) as to which partial summary judgment has been directed. *See* FED. R. CIV. P. 54(b); FED R. BANKR. P. 7054. A fraudulent transfer claim under section 548 is a "core proceeding" under 28 U.S.C. § 157(b)(2)(H), and a bankruptcy court may enter judgment on core proceedings. 28 U.S.C. § 157(b)(1).

The Court determines that there is no just reason for delay. The issues raised by the motion for partial summary judgment are entirely separate from the issues raised by the remaining claims. The remaining claims are subject to coordinated discovery with the claims against the Boulder Defendants in the class action pending in the United States District Court for the Northern District of California, *Hunter v. Citibank*, No. 5:09-cv-02079-JW, and are unlikely to be resolved for a considerable period of time.

12

**CONCLUSION**

For the reasons stated herein, the Trustee is entitled to prejudgment interest at the bank prime rate accruing on the dates of the transfers, September 7, 2005, June 26, 2006 and September 29, 2006, at 6.5%, 8.0% and 8.25%, respectively, with prejudgment interest accruing from the Commencement Date, March 20, 2009. The Trustee is also entitled to post-judgment interest at the federal judgment rate pursuant to 28 U.S.C. § 1961 after entry of a judgment.

The Trustee shall settle a judgment including prejudgment interest in accordance with Local Bankruptcy Rule 9074-1(a).


DATED:    November 1, 2010
          New York, New York

                                    _____/s/Martin Glenn_____
                                         MARTIN GLENN
                                    United States Bankruptcy Judge